UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ROBERT STRINI and TERRY STRINI,

                      Plaintiffs,

    v.                                  No. 05-CV-440
                                       (GLS/DRH)

EDWARDS LIFESCIENCES CORPORATION;
EDWARDS LIFESCIENCES LLC; and
EDWARDS LIFESCIENCES (U.S.), INC.,

                      Defendants.

---

**APPEARANCES:**

DeGRAFF, FOY, KUNZ & DEVINE, LLP
Counsel for Plaintiffs
90 State Street
Albany, New York 12207

WILSON, ELSER, MOSKOWITZ, EDELMAN
   & DICKER LLP
Counsel for Defendants
677 Broadway - 9th Floor
Albany, New York 12207-2996

THORN GERSHON TYMANN & BONANNI, LLP
Counsel for Non-Party St. Peter's Hospital
5 Wembley Court
Post Office Box 15054
Albany, New York 12212

ISEMAN, CUNNINGHAM, RIESTER & HYDE, LLP
Counsel for Non-Party St. Peter's Hospital
9 Thurlow Terrace
Albany, New York 12203

**OF COUNSEL:**

DAVID F. KUNZ, ESQ.
GEORGE J. SZARY, ESQ.

F. DOUGLAS NOVOTNY, ESQ.
THERESA B. MARANGAS, ESQ.

MAUREEN S. BONANNI, ESQ.
MANDY McFARLAND, ESQ.

ROBERT H. ISEMAN, ESQ.
FREDERICK C. RIESTER, ESQ.
RACHEL RYAN, ESQ.

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

    Presently pending are the second motions of plaintiffs Robert and Terry Strini

("Strinis") and defendants Edwards Lifesciences Corporation, Edwards Lifesciences LLC, and Edwards Lifesciences (U.S.), Inc. (collectively "Edwards") to compel non-party St. Peter's Hospital ("St. Peter's") to produce certain documents. Docket Nos. 126, 127. For the reasons which follow, those motions are granted in part and denied in part.

## I. Background

The general background is set forth in the memorandum-decision and order filed December 19, 2007, familiarity with which is assumed. See Docket No. 91; Strini v. Edwards Lifesciences Corp., No. 05-CV-440 (GLS/DRH), 2006 WL 3751338 (N.D.N.Y. Dec. 19, 2006), appeal docketed, Docket No. 93 (N.D.N.Y. Dec. 29, 2006) [hereinafter "Strini I"]. In that decision, St. Peter's' assertion was upheld that in responding to subpoenas from the parties, four pages of documents from St. Peter's internal investigation regarding this matter were protected from disclosure by N.Y. Pub. Health Law § 2805-m (McKinney 2002) and N.Y. Educ. Law § 6527(3) (McKinney Supp. 2006), which generally protect from disclosure records and information generated as part of a hospital's quality assurance and infection control programs.

Thereafter, St. Peter's advised that it had located an additional ninety-nine pages of documents which might fall within the scope of the parties' subpoenas. However, St. Peter's asserted the same state law privileges as to those documents.[1] St. Peter's was ordered to serve the parties with a privilege log as to those documents. Docket No. 98.

---

[1] St. Peter's also asserted the attorney-client privilege as to certain of those documents. That assertion has since been withdrawn. See Tr. of Proceedings on Feb. 1, 2007 at 6.

The ;privilege log served by St. Peter's describes documents which, like the four pages which were the subject of Strini I, were solely internal to St. Peter's as well as others that reflect communications to individuals and entities outside St. Peter's, including Edwards.[2] St. Peter's served the privilege log and the parties moved to compel production of the documents listed therein. Docket Nos. 126, 127.

## II. Discussion

Strini I held that the state law privileges asserted by St. Peter's were applicable in the circumstances of this case and protected from disclosure the four pages of internal documents at issue in that decision.[3] Here, St. Peter's contends that those privileges apply not only to solely internal documents generated in the course of its internal investigations but also to any documents obtained from or sent to sources outside St. Peter's. It contends that these privileges protect from disclosure any record or information obtained by St. Peter's in the course of performing its quality assurance functions even where such records or information were sent to or obtained from sources outside the hospital who have no obligations to St. Peter's quality assurance functions. Thus, the issue presented here is whether the state law privileges protect from disclosure records and information communicated to or from sources not protected by privilege.

As noted in Strini I, if "a document was generated to insure and improve the quality of

---

[2] St. Peter's has also submitted the documents in question to the undersigned for ex parte, in camera review.

[3] The Strinis have filed an appeal of Strini I. Docket No. 93. That appeal remains pending.

3

care to patients, that document is protected from compelled disclosure by the Public Health and Education Laws . . . ." Strini I at 5. Those state law provisions govern St. Peter's assertion of their protection in this federal action by virtue of Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law."); see also Ryan v. Staten Island Univ. Hosp., No. 04-CV-2666 (ENV), 2006 WL 1025890, at *2 (E.D.N.Y. Apr. 13, 2006); Tartaglia v. Paul Revere Life Ins. Co., 948 F. Supp. 325, 326-27 (S.D.N.Y.1996).

However, like all other privileges, these state law privileges constitute exceptions to the general principle that all relevant evidence must be produced. See, e.g., Fed. R. Evid. 402) ("All relevant evidence is admissible . . . ."); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."). As such, the scope of any privilege or rule of confidentiality must be narrowly construed. See In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007) ("we construe the [attorney-client] privilege narrowly because it renders relevant information undiscoverable; we apply it 'only where necessary to achieve its purpose.'") (quoting Fisher v. United States, 425 U.S. 391, 403 (1976)); see generally United States v. Nixon, 418 U.S. 683, 719 (1974) ("Whatever their origins, ... exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."). "The burden of establishing the applicability of [a] privilege rests with the party invoking it." In re County of Erie, 473 F.3d at 418.

Analysis of the scope of the privileges here begins with an examination of the statutory language which created them. Under the Public Health Law, protection is afforded

4

to "information," "reports," and "incident reporting requirements" mandated to be performed under the Public Health Law.  N.Y. Pub. Health Law § 2805-m(1).  Under the Education Law, protection is afforded to "proceedings," "records," and "reports" required by the quality assurance program.  N.Y,. Educ. Law § 6527(3).  The language in both statutes plainly protects internal records and information generated by a hospital in fulfillment of its quality assurance functions.  The language does not, however, plainly address whether these protections includes records and information communicated to or from sources outside the hospital and not required to participate in the quality assurance functions.

     Case law on the issue is more instructive.  St. Peter's relies principally on Logue v. Velez, 97 N.Y.2d 13 (1998).  There, plaintiffs sued a doctor and a hospital for malpractice, including claims that the doctor was inadequately trained to perform the surgery at issue and that the hospital was negligent in granting the doctor privileges to conduct this surgery.  During discovery, plaintiffs demanded production of the hospital's records regarding the doctor's applications for privileges, the hospital asserted the Public Health and Education Law privileges against production, the trial court overruled the hospital's privilege claims and compelled production, and that order was affirmed by the appellate division.  97 N.Y.2d at 16.  The New York Court of Appeals reversed, upholding the privilege claim.  The court held that the privileges "confer[] complete confidentiality on information gathered by a hospital in accordance with" the statutes.  Id. at 17.

     It is clear from the decision, however, that it addressed only the doctor's "initial and renewal applications for privileges."  Id. at 18.  Such documents were confidential from their creation through and after decisions were made on those applications.  St. Peter's interprets Logue as support for its contention that the state law privileges broadly protect from

5

disclosure all records generated or received by the hospital in the quality assurance process, no matter whether they were received from or disclosed to sources not protected by those privileges. The decision does not address, however, whether the privileges apply to records which lacked confidentiality either before or after they were obtained by a hospital during a quality assurance proceeding. Logue, therefore, does not directly address the issue raised here.

In In re Subpoena Duces Tecum to Jane Doe, 99 N.Y.2d 434 (2003), the New York Court of Appeals considered the scope of protection afforded by a federal statute similar to the state law privileges asserted here. In that case, a grand jury subpoena was issued for the records of three nursing homes in connection with a Medicaid fraud investigation. The nursing homes moved to quash the subpoenas on the grounds that the records sought were protected from disclosure by the New York Public Health Law and the federal Nursing Home Reform Act, 42 U.S.C. § 1396r. The trial court denied the motion and the appellate division affirmed. The Court of Appeals reversed, holding that the records were protected from disclosure by the federal statute. Id. at 442. In so holding, however, the court noted:

> Where facilities are compelled by a statutory or regulatory dictate to maintain a particular record or report that is not expressly related to quality assurance, the fact that a quality assurance committee reviews such information for quality assurance purposes does not change the essential purpose of the document. A facility may not create a privilege where none would otherwise exist merely by assigning the duty for compliance or compilation to a quality assurance committee.

Id. at 440.

An appellate division subsequently applied this standard under the Public Health and Education Laws. In Marte v. Brooklyn Hosp. Ctr., 9 A.D.3d 41 (2d Dep't 2004), the plaintiff alleged that while she was a patient at the defendant hospital, the negligence of the hospital

6

allowed her to be sexually assaulted by an intruder. During discovery, the hospital sought a protective order precluding production of records relating to the incident under the Public Health and Education Law privileges and the trial court granted the hospital's motion. In reversing that ruling, the appellate division followed the guidance of In re Subpoena Duces Tecum in holding that records generated by or for the quality assurance function of a hospital are protected by the state law privileges while records not otherwise confidential were not. 9 A.D.3d at 48.

The conclusion to be drawn from In re Subpoena Duces Tecum and Marte is that, contrary to St. Peter's contention, the Public Health and Education laws do not protect from disclosure all records which happen to have been included in a hospital's quality review proceeding. Rather, these cases compel the conclusion that these state law privileges protect from disclosure only those records and information generated by the hospital pursuant to its quality assurance obligations and not received from or sent to sources not protected by those privileges. This conclusion also comports with the principle that the scope of a privilege should be narrowly construed. See In re County of Erie, 473 F.3d at 418; see also United States v. Nixon, 418 at 719.

It also comports with the scope of other privileges, both common law and statutory. See, e.g., Fisher, 425 U.S. at 402 (holding that attorney-client privilege protects only those communications which might not have been made absent the privilege, because the purpose of the privilege is to encourage confidential disclosures by a client to an attorney); Carrion v. City of New York, No. 01CIV.02255(LAK)(DF), 2002 WL 523398, at *2-3 (S.D.N.Y. Apr. 8, 2002) (holding that doctor-patient privilege under New York statute is waived where otherwise privileged information is disclosed to third party); Tigue v. U.S. Dep't of Justice,

312 F.3d 70, 80-81 (2d Cir. 2002) (holding that deliberative process privilege may be waived by publication or public adoption of otherwise privileged document); see also In re Grand Jury Subpoena, 103 F.3d 234, 238-39 (2d Cir. 1996) (holding that the rule of grand jury secrecy in Fed. R. Crim. P. 6(a) not violated by disclosure of documents presented to the grand jury but which were generated outside the grand jury process).  In addition, St. Peter's has not identified any privilege of any kind which purports to protect all records and information from any source simply by virtue of its passing through a quality review process.

     Therefore, as held in Strini I, the Public Health and Education Law privileges protect from disclosure those internal records and information generated and maintained as part of St. Peter's quality assurance proceedings.  However, the scope of that protection does not extend to records and information communicated to or from sources outside St. Peter's not protected by the privileges.  Accordingly, as to the ninety-nine pages at issue, here, the motions of the Strinis and Edwards are each granted to the extent that St. Peter's shall disclose to the parties those records from among the ninety-nine pages which were communicated to or from sources outside St. Peter's.  A review of the privilege log and the documents indicates that the following pages fall outside the scope of the privileges and shall be disclosed by St. Peter's: 5-7, 10-16, 20-25, 27-57, 62-64, 67, 69-72, 82-84, and 89-93.

### III. Conclusion

    For the reasons stated above, it is hereby

        **ORDERED** that the motions of the Strinis and Edwards to compel St. Peter's to

produce ninety-nine pages of documents (Docket Nos. 126, 127) are each **GRANTED** to the extent that on or before **April 13, 2007**, St. Peter's shall produce to the parties copies of pages 5-7, 10-16, 20-25, 27-57, 62-64, 67, 69-72, 82-84, and 89-93 from among the ninety-nine pages, and the motions are otherwise **DENIED**.

**IT IS SO ORDERED.**

DATED:  March 30, 2007
         Albany, New York

_David R. Homer_
United States Magistrate Judge